150 So.2d 473 (1963)
Wendall P. ARRINGTON, Appellant,
v.
Evelyn O. ARRINGTON, Appellee.
No. 62-47.
District Court of Appeal of Florida. Third District.
February 19, 1963.
Rehearing Denied March 19, 1963.
*474 Ross Williams and Harry Neham, Miami, for appellant
Paul A. Louis and Bertha Claire Lee, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and CARROLL and HENDRY, JJ.
PEARSON, TILLMAN, Chief Judge.
This is an appeal by the defendant-husband from a final decree granting a divorce and $25,000.00 as a lump-sum award to the plaintiff-wife.[1] We affirm that portion of *475 the decree granting the divorce to the appellee and reverse and modify the lump-sum award.
The appellant has argued twenty assignments of error under seven points. We think that appellant's points 1 and 3 may be considered together because each goes to the granting of a divorce to the wife. Point 1 urges that the sufficiency, weight and legal effect of the evidence was such that the chancellor should have denied the wife's prayer for a divorce upon the ground of *476 extreme cruelty. Point 3 urges that the chancellor should have granted a divorce upon the husband's counterclaim upon the ground of habitual intemperance.
Appellant first urges that the complaint does not state facts necessary to properly allege a cause of action on the ground of extreme cruelty. See Crawford v. Crawford, 17 Fla. 180 (1879); Seddon v. Seddon, 82 Fla. 48, 89 So. 348. We do not find merit in this contention. An examination of the original complaint reveals that sufficient facts were not stated to properly allege a cause of action. However, by subsequent order of the chancellor, the complaint was amended by adding certain paragraphs contained in the wife's answer to the husband's counterclaim. Sufficient facts are included in the amended portions of the complaint to properly allege a cause of action on the ground of extreme cruelty. It is to be noted that the appellant-husband did not move to dismiss the original complaint for failure to state a cause of action, but attempts to raise this objection for the first time in the appellate court. While the Supreme Court of this State has held that it would reverse as fundamental error a final decree of divorce based on a "fundamentally insufficient" complaint even without a motion to dismiss having been interposed, Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637, such argument cannot prevail in the instant case where the amended complaint is clearly not fundamentally insufficient.
Points upon appeal devoted to the weight or legal effect of the evidence in divorce cases call for a review of all the evidence before the chancellor, and appellate courts are always conscious that they have before them only the reported testimony, never the witnesses. Therefore, it must be clearly demonstrated that the chancellor "missed the boat" for us to reverse the decree upon these grounds. It is sufficient to say that such is not the case upon this record.
We have likewise reviewed the record to determine the sufficiency of the evidence to support the finding against the appellant upon his charge as counterplaintiff that the appellee was guilty of habitual intemperance, and we hold that the chancellor was correct.
The fifth and sixth points presented question items allowed as costs against the defendant. They are as follows: (a) $385.00 to a real estate appraiser for appraising five pieces of property and his court attendance; and (b) $100 each to two doctors for court attendance. In each instance the appellant says that the fee is excessive, but he failed to place in the record any standard by which the reasonableness of the fees may be measured. In the absence of a showing of error, the trial court will be presumed to be correct.
The fourth point urges that an attorney's fee of $2,500 allowed to the plaintiff-wife was without basis in the law and was excessive. This fee was assessed in the final decree and is the only allowance made. We are thus presented with the question of whether it is within the discretion of the chancellor to award attorney's fees to a wife in a divorce case when the wife has independent means. The question has been discussed and we believe authoritatively settled by Turney v. Turney, Fla.App. 1963, 149 So.2d 83 [opinion filed January 29, 1963]. There is no merit in appellant's contention.
Points two and seven remain for consideration. Each urges that the chancellor erred in allowing to the appellee-wife the sum of $25,000.00 as a "lump-sum award." [Footnote 1]. The chancellor decreed that the appellee was entitled to this sum and that, "* * * whether it be in lieu of alimony or special equity is of no importance * * *." We must, therefore, examine the basis for the award on each ground.
The possible basis for the award as an equitable interest in the husband's property is not supported by the record. The wife urges that for a substantial portion of the time the parties lived together *477 she furnished almost all of the living expenses, that they lived in her house, and that during the husband's lengthy recovery from his accident she acted as his practical nurse. These are commendable acts on the part of a wife but not compensable by an equitable interest in the husband's estate. Each party is expected to be a help and companion to the other. We have not so far abandoned the idea of marriage as a unity of man and wife as to figure equities on the basis of the assistance one gives to the other in the performance of ordinary marital duties.
We shall now examine the basis of the award as alimony. The form of payment in a lump sum does not change the nature of an award; it may still be characterized as alimony. Section 65.08, Fla. Stat., F.S.A. has been amended to specifically provide that "In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in a lump sum." Such an award must be determined upon a need of the wife and the ability of the husband. Collins v. Collins, 153 Fla. 10, 13 So.2d 445. Alimony is not allowed as a vehicle for which to obtain repayment of monies advanced to the husband or expended for his account. Spears v. Spears, Fla.App. 1963, 148 So.2d 564.
We think that the record reflects the need of the wife and the ability of the husband to pay alimony. In addition, the determination of the nature of the payment (that is, whether by periodic or lump-sum payment) is for the chancellor; and where, as here, the record reveals circumstances which may make a lump-sum payment more equitable, the nature of the award will not be disturbed.
Viewed in the light most favorable to the decree, it appears from the record that the wife owns her own home and has between $5,000 and $10,000 capital. She is 51 years old and is not specially trained. She has had some success raising dogs for sale, but the business is at best precarious. The husband is a construction contractor with a substantial cash backlog. His net worth was set at $63,500.00. Under these circumstances we hold that the award of $25,000 was excessive. Cf., Yandell v. Yandell, Fla. 1949, 39 So.2d 554; Goode v. Goode, Fla. 1954, 76 So.2d 794. Accordingly, the alimony award is reduced to $15,000, and as modified the decree is affirmed.
Modified and affirmed.
NOTES
[1] The chancellor set forth his findings as follows:

"The parties were married on July 15, 1955. Thereafter the defendant moved into the plaintiff's Brickell Avenue home.[1] In passing it should be noted that at all times (while living together) the parties have lived in a house owned by the plaintiff.
"The defendant was making approximately $125.00 a week at the time of the marriage as a supervisor of construction work in Fort Myers, Florida. On December 8, 1955, he was involved in a serious accident in Fort Myers and as a result thereof was seriously incapacitated for some years. Litigation followed and ultimately, the defendant received a judgment in his favor (Wendall Arrington v. Lee Ratner, et al, Circuit Court, Dade County, At Law No. 36735, Ratner v. Arrington, Fla.App., 111 So.2d 82). His net proceeds were $98,790.33. While not exactly commencing at this point, it may safely be said that the domestic difficulties of the parties were intensified as a by-product of this recovery.
"In considering these `difficulties' between the parties it is apparent that there have been many, and the wounds here run deep. Not only has the plaintiff charged the defendant with desertion and extreme cruelty but the defendant also seeks his freedom; he having counterclaimed for a divorce on the ground that the plaintiff is guilty of habitual intemperance.
"There is little to be said for (and nothing to be gained by) detailing the evidence here[2] relating to these issues. Suffice it to say that after observing the witnesses (their demeanor and conduct while testifying) and hearing their testimony, the court finds that the equities are with the plaintiff and against the defendant, that the defendant is guilty of extreme cruelty[3] to the plaintiff, and that the defendant-counterclaimant's evidence relating to his charge of `habitual intemperance' on the part of the plaintiff falls grossly short of the minimum requirements to establish that ground for divorce. See Todd v. Todd, Fla., 56 So.2d 441, 29 A.L.R.2d 920.
"Turning now to the classical `thorn' in protracted divorce proceedings: `money',  the court finds that from the time of defendant's accident to the time he obtained the net proceeds of his judgment, defendant's sources of income were so limited as to be practically non-existent. There is no real dispute as to this. It goes without saying then that help was necessary from someone.
"Without attempting to delineate each contribution, and the circumstances surrounding it, the record is replete with evidence to the effect that the plaintiff contributed in excess of $25,000.00 cash to the marital `kitty' and this does not include moneys used for the support of the parties that was derived from the `poodle business' which plaintiff started after the accident; nor does it include any monetary value for the plaintiff's nursing services to the defendant which services were above and beyond the call of wifely household duties.
"From the time the defendant received the proceeds of his judgment until the separation of the parties (less than a year later) the defendant concerned himself almost exclusively with his `corporate veil', W.P. Arrington, Inc., of which he owns ninety-six percent of the outstanding stock.
"On the basis of all of the evidence  the foregoing being but some of the highlights  the court finds that the plaintiff is entitled to receive a monetary award from the defendant. The evidence on this point is clear beyond any question of doubt. As previously noted, in addition to her monetary and special service contributions, the plaintiff supplied the `roof over the marital domicile' all through the marriage (while the parties were living together). See Collins v. Collins, 153 Fla. 10, 13 So.2d 445.
"The fact that the plaintiff just happens to have a `little left' is no justification for turning her out without any award, as the defendant suggests. The Court finds no merit whatsoever in this contention.
"Considering all the facts and circumstances, the court finds that the plaintiff is entitled to a lump sum award (whether it be in lieu of alimony or special equity is of no importance); that the sum of $25,000.00 is a fair, reasonable and equitable amount; and that the plaintiff is entitled to security for the payment of this award.
"[1] There is no question but what both parties are long time bona fide residents of Florida.
"[2] It is all in the voluminous record.
"[3] Plaintiff's charge of `desertion' appears from the evidence (or lack of it) to have been abandoned. If it has not been, then it fails for lack of proof and the court so finds."