HAIGOUHE BAYLARIAN, *Appellant,* vs. W. H. TUNNICLIFFE, as Liquidator of THE STATE BANK OF ORLANDO & TRUST Co., an insolvent Banking Corporation, *Appellee.*

141 So. 609.

En Banc.

Opinion filed May 11, 1932.

Petition for rehearing denied July 19, 1932.

Opinion on rehearing filed December 6, 1932.

*M. B. Sterrett, W. O. Anderson,* and *Pleus, Williams & Pleus,* Attorneys for Appellant;

*H. M. Voorhis,* Attorney for Appellee.

DAVIS, Commissioner.—This case is here upon appeal

from a final decree of foreclosure and also from a decree denying a petition for rehearing. The bill of complaint was filed by appellee, whom we will hereafter refer to as complainant, against V. Baylarian and his wife Haighouhe Baylarian and others. In a separate answer filed by Mrs. Baylarian it was alleged that at the time she executed the mortgage in suit, she had no knowledge that the same included certain separate statutory property belonging to her, and that she was induced to sign the same by the representations of her husband, the witnesses to the mortgage, by the officer taking the acknowledgment, and by the officers of The State Bank of Orlando and Trust Company, that the mortgage only covered lots in Paradise Park, "and particularly that it did not cover the home place of this defendant located on Lots 9 and 10" of Veronica Heights. It was also alleged that she never acknowledged the said mortgage as the statute requires, though the officer's certificate falsely sets forth all of the statutory requirements. Said defendant prayed for a cancellation of the mortgage. The testimony was taken before a Master and reported to the Court, whereupon the Court entered the decree which contains the following findings:

"That this is a suit to foreclose a mortgage securing an indebtedness of $32,745.18, executed by V. Baylarian and Haigouhe Balyarian, his wife, to The State Bank of Orlando & Trust Company, encumbering certain lots in Veronica Heights and Paradise Park, Orlando, Orange County, Florida. Haigouhe Baylarian alleges that her husband and an agent of the bank represented to her that the mortgage did not cover the home, (Lots 9 and 10, Veronica Heights) title to which is vested in her. The real issue in the case is whether the mortgage is effective as to Lots 9 and 10 of Veronica Heights. Mrs. Baylarian also denies that she acknowledged the execution of the mortgage separate and apart from her husband, but the testimony adduced by the defendants in regard to this point is not

so clear, strong and convincing as to overcome the force and effect of the certificate of acknowledgment executed by the Notary Public and the testimony of the Notary and another witness showing that Haigouhe Baylarian was personally present before the Notary and the acknowledgment taken separate and apart from her husband.

"The testimony discloses a conspiracy between Baylarian and an employee of The State Bank of Orlando & Trust Company to induce Haigouhe Baylarian to mortgage her home to secure the payment of Baylarian's indebtedness to the bank. They agreed (according to the testimony of Baylarian and a corroborating witness) that they would tell Haighouhe Baylarian the mortgage covered other real estate and did not include her home. This scheme was carried out and a mortgage executed to secure an indebtedness of $12,000.00. Later the amount of Baylarian's indebtedness was increased and he and the same employee of the bank agreed that a renewal of the mortgage should be executed under the same plan of misrepresentation to secure an indebtedness of $24,000.00. About two years after the execution of the first mortgage (the employee of the bank having died in the meantime), Baylarian continued the fraudulent scheme relative to the property covered by the mortgage and induced his wife to execute the mortgage being foreclosed. The question arises as to whether the fraud participated in by an employee of the bank in procuring the mortgages of $12,000.00 and $24,000.00 respectively, extended to the mortgage being foreclosed, and, if so, to what extent the fraud invalidates it.

"It is clear from the testimony that Haigouhe Baylarian understands the English language very little. She cannot read it and it is very difficult for her to converse in that tongue, although she may be well educated in her native language, she depends upon her husband to guide her in all business matters, and was therefore an easy victim to the nefarious trap set for her by her husband.

"As the said employee of the bank has departed this life, no censure of his conduct as disclosed by the tes-

timony should be made. If he were alive perhaps he could refute the damaging testimony given; however, there is no reason to spare Baylarian from condemnation for his culpable conduct. His action throughout was extremely reprehensible. He is a self-confessed defrauder and his testimony is entitled to weight only as far as it is corroborated by credible witnesses.

"The record does not disclose that notice of the fraudulent conduct in inducing Haigouhe Baylarian to execute the $12,000 and $24,000 mortgages was ever communicated to any officer of the bank, and the knowledge of the employee in reference to the same is not imputable to the bank as to the present mortgage, unless the execution of this mortgage was a part of the same transaction, which the court does not so consider. However, it appears that the second mortgage was but a renewal of the first and both of these were vitiated as to Lots 9 and 10 of Veronica Heights by the fraud practiced upon her, Haigouhe Baylarian. The $24,000 mortgage indebtedness was later carried over into the present mortgage and the continuation of the fraudulent representations which induced Haigouhe Baylarian to execute the former mortgages, (although made solely by V. Baylarian) was proximate cause of her willingness to execute the mortgage sought to be foreclosed. Therefore, the present mortgage must be held void and of no effect as to Lots 9 and 10 of Veronica Heights to the extent of $24,000, plus thirteen months' interest at eight per cent. per annum.

"The Court is of the opinion that, while the parties entering into the conspiracy did not contemplate that their misconduct would affect any subsequent mortgages between Baylarian and the bank, yet the last mortgage was so closely related to the former second and the procuring causes of all the mortgages were so associated and interrelated that it is apparent that but for the fraud perpetrated upon Haigouhe Baylarian in the first mortgage she could not have been induced to join in the present one. A force was put in motion which was not checked until the poison penetrated the entire dealings between the parties in reference to the mortgages securing V. Baylarian's indebtedness to the

Bank. Fraud vitiates whatever and wherever it reaches and in this instance it extended into the present mortgage to the extent of $24,000, plus interest thereon.

"It so appears from the testimony adduced in this cause that the complainant advanced certain sums of money for the payment of taxes on Lots 9 and 10 and for the payment of interest and installments of principal on prior mortgages encumbering the same two lots. These are properly chargeable against the home property.

"Therefore, it is ordered, adjudged and decreed * * * that the mortgage securing said indebtedness is subject to foreclosure and that the mortgage indebtedness is a lien upon all of the mortgaged premises with the exception of Lots 9 and 10 of Veronica Heights, and that said Lots 9 and 10 of Veronica Heights is security only for $6665.18, plus interest thereon from December 10th, 1929, to June 30th, 1931, at the rate of ten per cent. per annum, plus taxes in the amount of $1,170.29; interest and principal on prior mortgages in the amount of $2,423.90, advanced by complainant for the protection of said Lots 9 and 10 of Veronica Heights."

We have quoted at length from the decree because we deem the statement of facts therein contained to be substantially correct. However, it should not be inferred that we have adopted the conclusions drawn from those facts by the Chancellor, or that rules of law, or equitable principles were correctly applied to such facts.

The appellant has assigned a number of errors, all of which, except the last one, are based upon the final decree. The real question involved here is raised by assignments of error which question the propriety of the decree foreclosing the mortgage against the separate property of appellant. The complainant (appellee here) has not filed any cross assignments of error.

Assuming that the mortgages for $12,000 and $24,000 were executed by Mrs. Baylarian because her husband and an agent of the bank acting within the apparent scope of his authority, conspired together to fraudulently

induce her to mortgage her property to secure the indebtedness of her husband, and as a result of their fraudulent representations she did execute the said two mortgages, does it follow that because of such representations the mortgage in suit is so tainted with fraud that the Court should not have entered a decree of foreclosure against the separate property of Mrs. Baylarian?

Where fraud is relied upon in any proceeding either at law or in equity, the allegations or averments should be specific and the facts constituting the particular fraud relied upon should be stated with certainty. Simmons vs. Dover Dr. Dist., 93 Fla. 1035, 113 So. 383; M. L. & C. Assn. vs. Price, 19 Fla. 127; 9 Enc. Pl. & Pr., 393; 1 Wiltsie on Mortgage Foreclosure 164.

> "This court is committed to the doctrine that, although the complainant may make out by proof a case which entitles him to relief, yet he can have no decree unless the allegations of the bill are adapted to the case proved, for the court pronounces its decree secundum allegata et probata. If a party intends to rely upon matter as constituting a ground for relief in equity, it ought to be set up in the bill; and, if not set up, though it appears by the evidence in the record to have been proven, it should not be considered at the hearing. See St. Andrews Bay Land Co. vs. Campbell, 5 Fla. 560; Thornton vs. Eppes, 6 Fla. 546; Anderson vs. Northrop, 30 Fla. 612, 12 So. 318; Goulding Fertilizer Co. vs. Johnson, 65 Fla. 195, 61 So. 441; 3 Encyc. Plead. & Prac. 357."

Kellogg vs. Kellogg, 93 Fla. 261, 111 So. 637.

Under our statute an affirmative defense, set-off or counterclaim may be set up in an answer to a bill in Chancery (Chapter 6907, Acts 1915, Sections 4906, 4907, 4908, Compiled General Laws, 1927), and the burden of proof is upon him who sets up an affirmative defense, set-off or counterclaim. Lonergan vs. Peebles, 77 Fla. 188,

81 So. 514; Tarpon Springs vs. Smith, 81 Fla. 479, 88 So. 613.

The fraud relied upon in the answer as a defense to the instant suit, is based upon alleged misrepresentations made to Mrs. Baylarian at the time she executed the last mortgage—the one in suit—and not when prior mortgages were executed by her. If it was the purpose of the said defendant to base her defense upon fraudulent representations made to her at the time the prior mortgages were executed and to contend that such fraud was the "proximate cause of her willingness" to execute the mortgage sought to be foreclosed, upon the theory that the last mortgage was merely a renewal of the previous mortgage, allegations to that effect, in issuable form, should have been made in the answer. M. L. & C. Assn. vs. Price, supra.

It is not contended here that the evidence shows that fraudulent representations were made to appellant by anyone other than her husband for the purpose of inducing her to execute the mortgage sought to be foreclosed, or that the bank or anyone then connected with it had actual knowledge of any such representations having been made when the two prior mortgages were executed. It has been settled here that the validity of a mortgage is not affected by the fact that the wife was induced to execute a mortgage by fraud and deception on the part of the husband, in which the mortgagee did not participate, and of which he had no knowledge. Smith vs. Commercial Bank of Jasper, 77 Fla. 163, 81 So. 154, 4 A. L. R. 862; Hall vs. Forman, 94 Fla. 682, 114 So. 560. See also Herald vs. Hardin, 95 Fla. 889, 116 So. 863.

The execution and delivery of the mortgage in suit was a transaction disconnected with the prior mortgages. It is true that the debt thereby secured included the amount that was secured by the $24,000 mortgage, but it

also embraced other debts or advances aggregating about eight thousand dollars, and for that reason it could not be a renewal of the prior mortgage. It calls for something more than a prolongation, or extension of the time of payment, of the debt secured by the prior mortgage. See Grace vs. Strickland (N. C.) 124 S. E. 856, 35 A. L. R. 1296; Koehler vs. Hussey (Ky.) 57 S. W. 241, 244. Appellant does not contend that she was not informed as to the amount of the debt secured by the mortgage. If she knew that, it follows that she knew that the contract which she was about to sign was different from those theretofore executed by her. The evidence shows that she relied for information solely upon her husband, and the fact that she was induced by fraud and deception on his part to execute the mortgage, and of which complainant had no knowledge, its validity cannot be successfully attacked by her.

The decree should therefore be affirmed, unless a reversal should be had upon some other ground, though we may not be in accord with the Chancellor as to the reasons assigned for his action. It is the ruling itself and not the reasons therefor which determines the correctness of a court's action. Ritch vs. Adams, 102 Fla. 983, 136 So. 719; Eli Witt Cigar & Tobac. Co., 99 Fla. 592, 127 So. 333; Adams vs. Am. Agr. Chem. Co., 78 Fla. 362, 82 So. 850; Bell vs. Niles, 61 Fla. 114, 55 So. 392; Warren vs. Warren, 66 Fla. 138, 63 So. 726.

It is also urged by appellant that the mortgage in question should be vitiated because the acknowledgment did not meet the requirements of the law. The certificate of acknowledgment is in substantial compliance with the statute, and the evidence is not sufficient to overcome it.

"The rule is well settled in this state (and we think in the majority of the states) that the certificate of acknowledgment of a married woman to a deed or mortgage is conclusive against her, in the absence of fraud

o'r duress, and that the testimony of the parties alone is not sufficient to overcome it, nor can the testimony of the officer taking the certificate be admitted to contradict his official certificate. Hart vs. Sanderson's Adm'rs, 18 Fla. 103; Shear vs. Robinson, 18 Fla. 379, text 443; Bank of Jennings vs. Jennings, 71 Fla. 145, 71 So. 31; Rausch vs. Eq. Life Assur. Society of the United States, 77 Fla. 846, 82 So. 295; Hutchinson v. Stone, 79 Fla. 157, 84 So. 151; Green v. First National Bank of Marianna, 85 Fla. 51, 95 So. 231."

Herald vs. Hardin, 95 Fla. 889, 116 So. 863.

The fact that the Court did not decree the mortgage lien to be good upon all of the mortgaged premises for the total amount does not make it harmful to appellant, and inasmuch as the complainant does not raise the point we have no reason for going into that question.

The decree appealed from is hereby affirmed.

PER CURIAM.—The record in this cause having been considered by the Court and the foregoing opinion, prepared under Chapter 14553, Acts 1929, Ex. Sess., adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the Court below be, and the same is, hereby affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.

---

UPON REHEARING AND REARGUMENT.

Decision filed December 6, 1932.

PER CURIAM.—A rehearing having been granted in this cause and the Court having further considered the record herein after the filing of additional briefs and after oral argument by counsel for the respective parties and the Court being now fully advised in the premises it is considered, ordered and decreed by the Court that the Opinion filed in this cause on May 11, 1932, be adhered

to and that the decree of the Circuit Court be and the same is hereby affirmed after rehearing and reargument.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.